**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION**

**CHARLES TOWNSEND**                                                               **PLAINTIFF**

    **v.**                          **Case No. 05-1110**

**MICHAEL J. ASTRUE,**[1]
**Commissioner, Social
Security Administration**                                                          **DEFENDANT**

**MEMORANDUM OPINION**

    Plaintiff Charles Townsend ("Plaintiff") seeks judicial review of the Commissioner's denial of his request for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.*, as amended, and for disability insurance benefits ("DIB") under Title II of the Act.  Plaintiff has exhausted his administrative remedies, and, pursuant to Section 1631(c)(3) of the Act and 42 U.S.C. § 1383(c)(3), judicial review is now appropriate. After reviewing the record, the Court hereby **REMANDS** the decision of the Administrative Law Judge ("ALJ") and **AWARDS BENEFITS** to Plaintiff.

**I.  Background**

    Plaintiff filed his application for SSI and DIB on May 5, 2003.  (TR 36).  He quit high school with an eleventh grade

---

[1]Michael J. Astrue became the Social Security Commissioner on January 20, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for acting Commissioner Jo Anne B. Barnhart as the defendant in this suit.

education and joined the Army.  (TR 37).  Plaintiff is a Veteran of the Korean War where he served as a truck driver for the Army.  (TR 37).  Following his military service, Plaintiff provided elder care for seventeen years.  (TR 37). Plaintiff's last employment was with a cemetery services crew where his work was primarily lawn care.  (TR 38).  Plaintiff reported using riding lawn mowers for that work, but still struggled with pain.  (TR 38-39).  He last worked in July 2002.  (TR 39).  The ALJ determined Plaintiff had past relevant work experience as landscape-lawn care laborer and grounds keeper (cemetery).  (TR 14).  In his May 2003 application, Plaintiff complained of neck and back pain, and severe anal pain (status post surgical incision and drainage-February 2003).

Plaintiff's concurrent applications for DIB and SSI were denied initially and upon reconsideration, and this request was timely filed.  At age 45, Plaintiff appeared, represented by counsel, and testified at a hearing before ALJ Don Curdie on April 5, 2005, via video teleconferencing between the Office of Hearings and Appeals in Little Rock, Arkansas, and the remote hearing site in El Dorado, Arkansas (TR 33). Carolyn Cobb, friend of Plaintiff, was present at the hearing but did not testify.  William D. Elmore, Vocational Expert, was present and testified at the hearing.

## II.  Standard of Review

The Court's review is limited to determining whether the Commissioner applied the correct standard of law and whether the Commissioner's findings of fact were supported by substantial evidence on the record as a whole.  *See* 42 U.S.C. §§ 405(g) and 1383(c)(3); *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).  Substantial evidence is relevant evidence that a reasonable mind would accept as sufficient to support the Commissioner's conclusion.  *See Warburton*, 188 F.3d at 1050.  In making this determination, the Court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it.  *See id.*  The Court may not reverse the Commissioner's decision merely because substantial evidence supports a different result.  *See Pierce v. Apfel*, 173 F.3d 704, 706 (8th Cir. 1999).  This is true even if the Court might have weighed the evidence differently and reached a different result if a *de novo* review were applied.  *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).

To receive disability benefits, a claimant must show: (1) a medically determinable physical or mental impairment that has lasted, or can be expected to last, for not less than twelve months; (2) an inability to engage in any substantial gainful activity; and (3) the inability results from the

impairment. *See* 42 U.S.C. §§ 423 (d)(1)(A), (d)(2); *see also Timmerman v. Weinberger*, 510 F.2d 439, 442 (8th Cir. 1975). The Court reviews the ALJ's decision to determine whether the ALJ followed the Commissioner's implementing regulations, which set out a five-step, burden-shifting process for determining whether the claimant has a "disability" within the meaning of the Social Security Act.

The five steps are (1) whether the claimant is currently engaging in "substantial gainful activity;" (2) whether the claimant is severely impaired; (3) whether the severe impairment is, or is comparable to, a listed impairment precluding substantial gainful activity as a matter of law; (4) whether the claimant, with his current Residual Functional Capacity ("RFC") can meet the demands of his past work, and if not; (5) whether the claimant retains the capacity to perform any other work that exists in significant numbers in the economy. *See* 20 C.F.R. §§ 404.1520, 416.920 (2004); *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (discussing the five-step analysis).

In the first four steps, the burden is on the claimant to prove that he or she is disabled. If the claimant is not able to perform his or her past work, the burden shifts to the Commissioner to prove there are jobs in the national economy the claimant can perform, although the ultimate burden of

persuasion remains with the claimant.  *See Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004); *see also Barnhart v. Thomas*, 540 U.S. 20, 24, 28 (2003) (noting that the existence of jobs in the national economy must be proved only at step five).

### III. Analysis

Plaintiff alleges three points of error by the ALJ.  First, the ALJ inappropriately determined Plaintiff's credibility.  Second, the ALJ erred by not deciding the case on the substantial evidence of the record as a whole.  Third, the ALJ erred by presenting an improper hypothetical to the vocational expert at Plaintiff's hearing.

Plaintiff alleges the ALJ inappropriately determined his credibility and failed to consider the substantial evidence of the record as a whole.  To determine a Plaintiff's credibility for subjective complaints, the ALJ must consider the following: Plaintiff's daily activities; duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; dosage, effectiveness and side effects of any medications; and functional restrictions.  *Polaski v. Heckler*, 729 F.2d 1320, 1320-22 (8th Cir. 1984).  In the present case, the ALJ improperly disregarded Plaintiff's complaints and the overwhelming evidence within the record that showed Plaintiff to be disabled.  *See Ghant v. Bowen*, 930

-5-

F.2d 633, 637 (8th Cir. 1991).  (TR 10-24, 33-62).

The record reveals a long list of medical problems supported by evidence.  Plaintiff alleged the following: use of a cane (prescription) for approximately three years prior to his disability hearing; left leg numbness; carpal tunnel - left with numbness; difficulty using left hand; severe pain in the left leg; intolerance for prolonged standing or sitting; some minor heart problems; chronic low back problems supported by MRI evidence; depression; and chronic cervical neck problem supported by MRI evidence.  (TR 40-56, 193-212, 485).

The ALJ found Plaintiff had a history of anal fistula-perirectal abscess; hepatitis-B and elevated liver enzymes; small disc protrusion at C3-C4 and C6-C7 with left neural foraminal narrowing; mild neural foraminal narrowing at C4-C5 and C5-C6 with findings of chronic active left C7 radiculopathy; moderate paracentral disc protrusion at L4-L5 with effacement of the thecal sac and mild spondylosis in the lumbar spine, especially at the facet joint; mild posterior disc bulge at L3-L4 with mild facet and ligamentous hypertrophy and partial degenerative disc desiccation at L4-L5.  (TR 17).  The ALJ found these problems would impose significant restrictions in the ability to perform basic work activities and would thus be "severe" within the meaning of the Regulations.  (TR 17).

However, the ALJ discounted Plaintiff's credibility as to subjective complaints. This finding was unsupported by the record as a whole. *See Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992) ("We will not disturb the decision of an ALJ who seriously considers, but for good reasons explicitly discredits, a claimant's testimony of disabling pain."). The ALJ may not disregard the Plaintiff's subjective complaints solely because the objective medical evidence does not fully support them. *Harris v. Shalala*, 45 F.3d at 1193 (8th Cir. 1995). The ALJ failed to properly weigh the medical evidence and the medical opinions of the treating physicians in making his decision.

The ALJ also improperly evaluated Plaintiff's testimony regarding his daily activities. The ALJ found that Plaintiff carried groceries, shopped with friends, and performed light housekeeping chores. (TR 19). However, Plaintiff's testimony and his Disability Supplemental Interview Outline ("DSIO")(TR 111) explained that Plaintiff would ride in the car to the grocery store with his friend but he would "sit out in the car and kind of sit and wait for a few minutes for her to come out." (TR 50). Plaintiff stated he would ride with his friend to the store, "just to get out of the house." (TR 51). As to carrying groceries into the house, Plaintiff stated, "I take like light bread and ...light things like that." (TR

51).

Plaintiff's testimony was consistent with his answers in the DSIO. (TR 111). He indicated he did not go grocery shopping because "it is [sic] hard for him to be on his feet." He did not do dishes, change sheets, iron, vacuum, or sweep, but he did wash some laundry and take out the trash. (Tr 111). He reported he did not wash the car or maintain the lawn. Plaintiff did report he could drive short distances. (TR 12).

Plaintiff indicated he needed to lie down twice a day for approximately two hours because of "severe pain and back pain." (TR 113). As for social activities outside the home, Plaintiff testified he tried to get out occasionally but that this made his conditions worse. (TR 47). Although Plaintiff stated he attended church on his DSIO, frequency of his attendance was not asked. (TR 112). At Plaintiff's disability hearing, he testified "I be trying [sic] sometime to go, but I, like I say, I have, you know, I don't have good days and ... it gets worse when I just try to walk and stand." (43-44). The ALJ improperly discounted Plaintiff's credibility concerning his subjective assertions of pain and impairment.

The ALJ also failed to properly credit the duration, frequency, and intensity of the pain. Plaintiff testified

that he is never free of pain. (TR 48). He stated he had to lie down twice or more a day for two hours. Plaintiff had severe anal pain and back pain. (TR 113). In January, 2005, plaintiff was taking Amitriptyline, Aspirin, Cyclobenzaprine, Gabapentin, Naproxen, and Tramadol (TR 487). These drugs help control pain, relax muscles, and soft tissue injuries, and muscuskeletal disorders.[2] These drugs cause various side effects to include drowsiness. Plaintiff testified he continuously took pain medicine or muscle relaxers for his back since he stopped working. (TR 42). The ALJ determined Plaintiff failed to perform his home therapy exercises. However, this was based upon Plaintiff's condition of being drowsy at one of his therapy sessions and his poor ability to perform the exercises for the therapist. (TR 17). Plaintiff's drowsy condition obviates from a record replete with prescription drug use to control pain - drugs that cause drowsiness. The Court finds the ALJ erred in finding Plaintiff refused his treatment plan.

Further, the record indicates Plaintiff is very restricted in his functional ability. He walks with a prescription cane, stays close to home, has difficulty getting in or out of chairs, and has difficulty using his left leg. (TR 48-50). He reported that he slept downstairs most of the

---

[2] Mosby's Medical Drug Reference 2004.

time because he was unable to climb the stairs.  (TR 14-15).
The Court finds the evidence supportive of the Plaintiff's
claims.  The ALJ erred in finding "numerous contradictions
between the claimant's allegations an testimony regarding the
severity of his impairment and other substantial evidence in
the claim."  (TR 20).

Plaintiff's third point of error alleges the ALJ relied
upon an improper hypothetical question posed to the vocational
expert at the Plaintiff's hearing.  In denying Plaintiff
benefits, the ALJ considered testimony from a vocational
expert ("VE") who suggested that Plaintiff could perform work
in the national economy.  (TR 10-24).  However, the VE based
his testimony on hypothetical scenarios posed by the ALJ which
did not include all of Plaintiff's impairments, particularly
his severe pain while standing and sitting, his drowsiness as
a side-effect of his pain medications, and his loss of
function and sensation in his left arm and leg.  The ALJ's
first hypothetical was posed as follows:

> Q: All right.  Assume an individual the same age with
> the same education background and the work experience
> of the claimant.  Assume an individual who will
> experience mild to moderate pain.  Further assume an
> individual with the ability to perform work within
> the full range of the light classification
> exertionally.  Assume this individual would have the
> ability to occasionally climb, balance, stoop, bend,
> crouch, kneel and crawl.  Could this individual
> perform any of the claimant's past relevant work?
>
> A: No, sir.

> Q: If not, could this person perform other jobs that exist in the local and regional or national economies?
>
> A: Yes, sir.

(TR 60). The VE went on to identify two jobs Plaintiff could perform. Then, the ALJ posed a hypothetical question that considered Plaintiff's subjective complaints of chronic pain and effects of his medication, and it was answered by the VE as follows:

> Q: Okay. Now hypothetical question number two would assume an individual the same age, education and background work experience of the claimant. Assume an individual with the ability to perform work as follows, due to the inability to be relieved of chronic pain and the effect of medication, this person cannot sustain concentration, persistence and pace on a routine, continuous basis to complete the required tasks of a job in an eight-hour day, 40-hour per week position. Could this person perform any of the claimant's past relevant work?
>
> A: No, sir.
>
> Q: If no, would there by other jobs this person could perform in the local, regional or national economy?
>
> A: No, sir.

(TR 61).

The ALJ failed to give the proper hypothetical controlling weight in reaching his conclusion. The Court finds the evidence supports a finding of disability. Plaintiff's complaints are credible as they are supported by medical evidence and opinions, Plaintiff's vocational factors which

render him unable to perform any job within the national economy, and Plaintiff's subjective complaints relating to exertional and nonexertional activities and impairments supported by the record and by third parties. *See Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000)(concluding the court may reverse the Commissioner's denial and award benefits outright if overwhelming evidence proves the plaintiff is disabled).

### III. CONCLUSION

For the reasons stated above, the Court finds the substantial evidence on the record as a whole overwhelmingly supports a finding that Plaintiff is disabled. Accordingly, it is ordered that the decision of the ALJ is **REMANDED** and Plaintiff is to be **AWARDED BENEFITS.**

IT IS SO ORDERED this 16th day of February, 2007.

/s/ Robert T. Dawson
ROBERT T. DAWSON
UNITED STATES DISTRICT JUDGE